## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JORDYN YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | File No. |
| | ) | |
| CITY OF SMYRNA, | ) | **JURY TRIAL DEMANDED** |
| CHRISTOPHER FLOWERS, | ) | |
| individually, and JOSEPH BENNETT, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Jordyn Young (hereinafter "Plaintiff" or "Ms. Young") submits the following Complaint for Damages and Equitable Relief against Defendant City of Smyrna ("Smyrna"), Lieutenant Christopher Flowers ("Defendant Flowers"), and Chief of Police Joseph Bennett ("Defendant Bennett" or "Chief Bennett") (collectively, "Defendants"), showing the Court as follows:

## INTRODUCTION

1.

From the time she was a teenager, Ms. Young sought to give back to her community through a career in law enforcement. However, soon after she became

a 911 dispatcher for Smyrna at age 20, Ms. Young was subjected to severe and pervasive sexual harassment, as well as assault, by her supervisor, Defendant Lt. Christopher Flowers, a 44 year-old married man. When she complained, nothing was done. After many months and multiple complaints, an independent investigation was conducted which confirmed that Defendant Flowers had sexually harassed Ms. Young. Despite this finding, Defendant Flowers received a slap on the wrist. In contrast, Ms. Young was subjected to a baseless investigation, placed on administrative leave, and constructively discharged, all in retaliation for her reporting of sexual harassment to department leaders, including Chief Bennett, who consistently failed to take allegations of sexual harassment seriously and instead punished Ms. Young, a victim of harassment, who they saw as creating problems in the male-dominant police department.

2.

Ms. Young asserts claims for sex discrimination in violation of the Equal Protection Clause of the Constitution of the United States, asserted via 42 U.S.C. § 1983, as well as multiple Georgia tort claims including assault and negligent hiring, retention, and supervision. In addition, Ms. Young intends to assert claims for sexually hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq*., upon receiving a

Notice of a Right to Sue from the Equal Employment Opportunity Commission ("EEOC"). Plaintiff seeks back pay and the lost economic benefits of her employment, reinstatement or front pay in lieu thereof, compensatory damages, punitive damages against Defendants Flowers and Bennett, reasonable attorneys' fees and costs of litigation, and all other relief this Court may deem just.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.

Ms. Young filed a timely Charge of Discrimination with the EEOC on September 15, 2020, and she plans to amend her Complaint to add Title VII claims for sexually hostile work environment and retaliation upon receipt of a Notice of a Right to Sue.

## JURISDICTION AND VENUE

4.

Ms. Young's constitutional claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

5.

The Court has supplemental jurisdiction over Ms. Young's state law claims under 28 U.S.C. § 1367.

6.

Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

**PARTIES**

7.

Ms. Young is a female who resides in Cobb County, Georgia, which is in the Atlanta Division of the Northern District of Georgia.

8.

At all relevant times, Ms. Young was an "employee" of Smyrna within the meaning of Title VII, 42 U.S.C. §2000e(f).

9.

Defendant Smyrna is a municipal corporation in the state of Georgia and is subject to the jurisdiction and venue of this Court. Smyrna may be served with a copy of this Complaint and process by serving the Mayor, Derek Norton at 2800 King Street, Smyrna, Georgia 30080.

10.

At all times relevant to this action, Defendant Smyrna was Ms. Young's "employer" as defined by Title VII, 42 U.S.C. § 2000e(b).

11.

Defendant Christopher Flowers was, at all relevant times, Ms. Young's supervisor. He is sued in his individual capacity. Defendant Flowers is subject to the jurisdiction of this Court and may be served with process by personal service or leaving copies of the summons and complaint at his dwelling house or usual place of abode with some person of suitable age and discretion residing there, or by delivering a copy of the summons and complaint to an agent authorized to receive service of process.

12.

Defendant Joseph Bennett is Smyrna's Chief of Police. He is sued in his individual capacity. Defendant Bennett is subject to the jurisdiction of this Court and may be served with process by personal service or leaving copies of the summons and complaint at his dwelling house or usual place of abode with some person of suitable age and discretion residing there, or by delivering a copy of the summons and complaint to an agent authorized to receive service of process.

13.

At all times relevant to this action, Defendant Smyrna was a state actor within the meaning of the Constitution.

14.

At all times relevant to this action, Defendants Flowers and Bennett were acting under color of state law.

**Factual Background**

15.

At just 20 years old, Ms. Young began her career in law enforcement as a 911 Dispatcher with Smyrna in April 2018.

16.

In this role, Ms. Young's direct supervisor was Trainer Kaitlyn Rutzen.

17.

Kaitlyn Rutzen, in turn, reported to a shift supervisor as well as to Defendant Flowers.

18.

Defendant Flowers supervised the department of 911 Dispatchers, including Ms. Young and was therefore her supervisor.

19.

Not long after Ms. Young began working as a dispatcher—and despite a 20-year age difference and a workplace power dynamic of supervisor and subordinate—Defendant Flowers began subjecting Ms. Young to severe and

pervasive sexual harassment.

## **Sexual Harassment and Assault by Defendant Flowers**

20.

Defendant Flowers' sexual harassment of Ms. Young began in October 2018, after Ms. Young helped decorate Defendant Flowers' office for his birthday, at the request of his wife.

21.

After this incident, Defendant Flowers told Ms. Young that he was going to figure out "payback" for her decorating his office.

22.

On October 24, 2018, Defendant Flowers texted Ms. Young suggesting "*payback*" in the form of her "*handcuffed and left in a dark room all night*."

23.

Defendant Flowers described this text conversation as "*just an us conversation*."

24.

Over text message, Defendant Flowers asked Ms. Young for her Snapchat handle, asked if she was "*wild and kinky*," and asked if she was "*submissive*."

25.

Defendant Flowers also asked Ms. Young about "*anal beads*," stated "*tell me the kinkiest thing you have ever done*," and asked her about using "*restraints*." Defendant Flowers also used Snapchat to ask Ms. Young about receiving a "*golden shower.*"

26.

Days later, on October 31, 2018, when Ms. Young arrived at the police station with other Smyrna employees, Defendant Flowers texted her and told her not to enter the building with her coworkers, and to wait outside.

27.

Defendant Flowers then directed Ms. Young to enter the women's locker room and report to the department's gymnasium.

28.

Ms. Young refused many times and eventually gave in and followed her supervisor's orders and arrived in the gym, where Defendant Flowers proceeded to repeatedly demand that Ms. Young "*get on her knees*."

29.

Ms. Young refused and eventually Defendant Flowers left; afterwards, however, Defendant Flowers texted Ms. Young, stating that she had failed the "*test*

*to obey his orders*."

30.

Over the next few months, Defendant Flowers' sexual harassment of Ms. Young continued.

31.

Defendant Flowers often texted Ms. Young when he was drunk and asked her for rides. Once, he texted her after she gave him a ride home and told her he wished he could have touched her.

32.

Defendant Flowers also sent Ms. Young pictures of himself kissing another officer's ex-wife, as well as pictures of his naked inner thigh going down to his feet.

33.

Defendant Flowers also requested that Ms. Young send him inappropriate pictures.

34.

On one occasion in November 2019, Defendant Flowers asked Ms. Young to meet him at a RaceTrac in Hiram, Georgia. When she did, he told her to remove

her raincoat because he had noticed that she was only wearing a small tank-top underneath.

35.

Although Ms. Young was uncomfortable, she eventually capitulated.

36.

During this same interaction at the RaceTrac, Defendant Flowers grabbed Ms. Young's arm and attempted to handcuff it to the steering wheel.

**Ms. Young's Reporting of Sexual Harassment**

37.

Ms. Young first reported Defendant Flowers' sexual harassment to her trainer and direct supervisor, Kaitlyn Rutzen, immediately after the first text about "payback" was received and again after the October 31, 2018 incident when Defendant Flowers had demanded she "get down on her knees."

38.

Supervisor Rutzen then reported this incident to Mary Jo Bagnato, the shift supervisor, but ultimately nothing was done in response.

39.

Later, in April 2019, a Smyrna employee anonymously reported to Chief David Lee (the former Chief of Police) that Defendant Flowers had been sexually

inappropriate with a dispatcher. In response to this reporting to management, Major McCormick approached Defendant Flowers and asked if this newly-reported incident was similar to Defendant Flowers' sexually inappropriate behavior with Ms. Young.

40.

Major McCormick is one of Defendant Flowers' supervisors.

41.

In response to this reporting, Major McCormick spoke with Defendant Flowers about the allegation, and Defendant Flowers admitted to being sexually inappropriate with Ms. Young.

42.

Even before April 2019, Major McCormick was aware of Defendant Flowers' inappropriate behavior towards Ms. Young because Defendant Flowers had previously disclosed it to him (McCormick) around January 2019 when he explained that he was getting divorced.

43.

Even though Major McCormick learned of Defendant Flowers' misconduct in or around January 2019, and even though an employee reported additional

allegations of Defendant Flowers' inappropriate behavior in April 2019, Major McCormick and Smyrna took *no action* in response.

### 44.

No one in Smyrna leadership or management ever asked Ms. Young about the allegations that Defendant Flowers had acted inappropriately with her.

### 45.

Ms. Young was too scared to further report the sexual harassment because her prior reports had been ignored and because additional allegations were obviously not being taken seriously by anyone with authority in the department.

### 46.

Ms. Young also knew that Major McCormick was responsible for conducting sexual harassment trainings with all officers; yet, he clearly did not take allegations of sexual harassment seriously and completely failed to address Defendant Flowers' harassment of Ms. Young, despite that he had been aware of it for many months.

### 47.

Ms. Young also knew that any additional allegations would be addressed by Internal Affairs, the head of which, Lt. Mark Binicewicz, had himself engaged in inappropriate sexual conduct with a subordinate female employee.

48.

It was apparent to Ms. Young that the male-dominant culture was one which tolerated sexual harassment by male superiors.

49.

At the end of 2019, Ms. Young reported Defendant Flowers' sexual harassment once again, this time to Lt. Brandy Forman, a female supervisor.

50.

Eventually, around February 2020, Lt. Forman reported Ms. Young's complaints up the chain to Defendant Chief Bennett. At this time, Lt. Forman also told Chief Bennett more generally that there were problems in the 911 Center because Defendant Flowers was sexually harassing dispatchers.

**Sexual Harassment Investigation**

51.

In early March 2020, Defendant Bennett held a meeting with Lt. Forman and Ms. Young, where he, *at the time*, stated that Lt. Flowers' behavior would not be tolerated.

52.

In this meeting, Ms. Young requested that any investigation be performed by an outside agency.

53.

In March 2020, the Sandy Springs Police Department conducted an investigation into Ms. Young's complaints.

54.

Defendant Bennett sought to narrow the investigation because he sought to hide Defendant Flowers' past misconduct as well as the department culture, which, from the top down, encouraged employees to look the other way in the face of sexual misconduct by male supervisors.

55.

In fact, Defendant Bennett instructed the Sandy Springs Investigator to only interview Ms. Young and Defendant Flowers, even though the Investigator sought to interview other potential victims and witnesses.

56.

During Sandy Springs PD's investigation process, Defendant Flowers admitted to engaging in inappropriate sexual behavior, requesting sexually explicit pictures from Ms. Young, and demanding Ms. Young get on her knees in October 2018 in anticipation of oral sex, among other things.

57.

The investigation found that Defendant Flowers had violated department policy and sexually harassed Ms. Young.

58.

As a result, Defendant Flowers signed a "Last Chance Agreement," where he specifically acknowledged that he:

> From October 2, 2018 until his removal from the 911 director/administrative lieutenant position, Lieutenant Christopher Flowers knowingly violated the City of Smyrna's Harassment policy by having an inappropriate relationship with his subordinate. This relationship included digital messaging of a sexual nature, unwanted physical contact, requests for the subordinate to get on her knees in anticipation of her performing oral sex.

59.

Despite all that occurred, Defendant Flowers was only given a seven day 12 hour suspension and a transfer to a different supervisory position.

60.

Defendant Flowers was also agreed to have no contact with Ms. Young.

61.

This Last Chance Agreement was finalized in May 8, 2020.

## Subsequent Retaliation Against Ms. Young

62.

Shortly after the sexual harassment investigation concluded in May, Defendant Bennett told Lt. Forman that he would not fire Defendant Flowers for his misconduct because the department had recently lost an officer in an accident, and that firing Defendant Flowers would "make him look insensitive."

63.

During this same conversation, Defendant Bennett told Lt. Forman that Ms. Young had "*played Lt. Flowers and taken advantage of his alcoholism*."

64.

Further, Defendant Bennett warned Lt. Forman that she "*should not trust [Ms. Young] alone around her own husband*."

65.

Within the next few weeks, Defendants Smyrna and Bennett initiated a baseless investigation into Ms. Young and Lt. Forman—the only individuals that had dared to speak up about sexual misconduct in the department.

66.

This baseless investigation involved another dispatcher, Kasie Cross, who on May 20, 2020 consumed an excessive amount of alcohol and dropped her baby headfirst on a hardwood floor as a result, resulting in a fractured skull.

67.

Ms. Cross disclosed this to Ms. Young, who reported the incident to Lt. Forman, as she believed she was required to do per department policy, particularly in light of the severity of the incident.

68.

As a result, Ms. Young was required to take a baseless polygraph test performed by a friend of Lt. Mark Binicewicz (the male officer in charge of Internal Affairs who engaged in inappropriate sexual conduct with a subordinate employee) and asked inappropriate questions about medications she had taken in the past.

69.

Ms. Young's former supervisor, Kaitlyn Rutzen, was interviewed about Ms. Young's sexual history.

70.

Since the time she learned of Defendant Flowers' "punishment" in May 2020, Ms. Young had continued to report his subsequent harassment and violations of the no-contact order, throughout June 2020 as she was instructed to do so on her "no contact agreement" unto which the department later denied.

71.

On July 8, 2020, Major McCormick told Ms. Young that she was being placed on administrative leave because of her disclosure that she had taken Percocet while off-duty in April 2020 in order to sleep after the death of an officer that occurred while Ms. Young was the dispatcher.

72.

Immediately, Ms. Young was required to turn in her badge card and door ID, and was humiliated when she was escorted out of the building like a criminal.

73.

In being placed on administrative leave, Ms. Young lost out on assured overtime opportunities and pay, and also lost out on additional hazard and training pay.

74.

Subsequently, Ms. Young retained a lawyer and was scheduled to have an administrative hearing regarding the future of her employment with Smyrna.

75.

Smyrna's leadership told Ms. Young's lawyer that they intended to terminate her employment at or after her administrative hearing.

76.

Left with no other choice, Ms. Young provided Defendant Bennett with a letter on August 3, stating that:

> The duress of the sexual harassment beginning when I was a 20 year old trainee, confirmed by the Sandy Springs investigation, subsequent retaliation by the department, unfair treatment when compared to how you handled the Flowers investigations, hostile work environment, and slandering my name throughout the department with false, inappropriate accusations instead of helping me find a way to heal and grow after what I have been through, has lead me to resigning.

77.

Ms. Young's constructive discharge avoided a formal termination and loss of her Georgia POST certification.

78.

Upon information and belief, similarly situated male employees who engaged in comparable conduct were not similarly subject to administrative leave or similar adverse action.

## COUNT I
## SEX DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE CONSTITUTION
### (Asserted via 42 U.S.C. § 1983)
### *Against all Defendants*

79.

Paragraphs 15 through 78 are incorporated herein by reference.

80.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Ms. Young to equal protection under the laws, including equal protection with respect to gender.

81.

The Equal Protection Clause of the Fourteenth Amendment provides a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment.

82.

Defendant Flowers violated Ms. Young's rights to equal protection by, *inter*

*alia*, subjecting her to a sexually harassing and hostile working environment because of her sex.

83.

Defendants Smyrna and Bennett violated Ms. Young's rights to equal protection by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct even though they knew of, and were on notice of, Defendant Flowers' sexual harassment of Ms. Young and others.

84.

Defendants Smyrna and Bennett also violated Ms. Young's rights to equal protection by retaliating against her when they subjected her to a baseless investigation, placed her on administrative leave, and constructively discharged her because of her sex.

85.

Defendants' conduct constitutes unlawful sexual harassment and discrimination, based upon gender, in violation of the Equal Protection Clause. Additionally and alternatively, Defendants unlawful conduct constitutes sexual harassment culminating in adverse employment action against Ms. Young.

86.

Defendants Smyrna, Flowers, and Bennett undertook all of the unlawful

conduct giving rise to Ms. Young's claims while acting under color of State, local law, regulations, customs or usages.

87.

Defendant Flowers, individually, violated clearly established law prohibiting sexually harassing a subordinate in the workplace.

88.

Defendant Flowers undertook his unlawful conduct intentionally, recklessly and maliciously with respect to Ms. Young and her federally protected rights, entitling her to recover compensatory and punitive damages against him, individually.

89.

In failing to take any corrective action despite knowing of Defendant Flowers' unlawful conduct towards Ms. Young, Defendant Smyrna ratified Defendant Flowers' conduct, and also exhibited deliberate indifference to Ms. Young's equal protection rights.

90.

In addition, Defendant Smyrna had a custom or policy of a code of silence in the face of male supervisors sexually harassing female subordinates. Additionally and alternatively, Defendant Smyrna had a custom or policy of enforcing the code

of silence by punishing female employees who reported sexual misconduct by male supervisors.

91.

Defendant Bennett, a final policymaker for Defendant Smyrna, violated clearly established law prohibiting sex discrimination in public employment when he, *inter alia*, baselessly investigated her, placed her on administrative leave, and constructively discharged her.

92.

Defendant Bennett undertook his unlawful conduct intentionally, recklessly and maliciously with respect to Ms. Young and her federally protected rights, entitling her to recover compensatory and punitive damages against him, individually.

93.

Defendants' actions were willful, wanton, and intentionally directed to harm Ms. Young.

94.

Defendants' actions were reckless and were taken in willful disregard of the probable consequences of their actions.

95.

As a direct and proximate result of the Defendants' violations of the Equal Protection Clause, Ms. Young has suffered damages including lost wages, lost benefits, emotional distress, inconvenience, loss of benefits, humiliation, and other indignities.

## COUNT II
## ASSAULT
### *Against Defendant Flowers and Defendant Smyrna*

96.

Paragraphs 15 through 78 are incorporated herein by reference.

97.

On or around October 31, 2018, Defendant Flowers instructed Ms. Young to enter the gymnasium and then demanded numerous times that she "get on her knees," in anticipation of oral sex.

98.

In or around November 2019, Defendant Flowers grabbed Ms. Young's arm and attempted to handcuff it to a steering wheel.

99.

On multiple occasions, Defendant Flowers' conduct and actions toward Ms. Young reasonably led her to anticipate that he would engage in the unwanted

touching of her, and in fact he did touch her, constituting an assault.

100.

Based on its actual and constructive knowledge of Flowers' misconduct and his history and propensity for the same, coupled with its failure to intercede on Ms. Young's behalf, Defendant Smyrna condoned, adopted, and ratified Flowers' conduct, making it liable for his assault of Ms. Young.

101.

As a result of Defendants' unlawful actions, Ms. Young has suffered emotional distress, inconvenience, humiliation, and other indignities.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *Against Defendant Flowers and Defendant Smyrna*

102.

Paragraphs 15 through 78 are incorporated herein by reference.

103.

Defendant Flowers intentionally, maliciously, wantonly and in gross and reckless disregard for Ms. Young's health and safety, engaged in extreme and outrageous conduct when he subjected Ms. Young to embarrassment, humiliation, degradation, and ridicule by sexually harassing her, thereby causing Ms. Young to

suffer extreme emotional distress, mental anguish, humiliation, and other indignities.

104.

Defendant Flowers' conduct toward Ms. Young was objectively malicious, wanton, and wholly incompatible with the standards of society.

105.

Based on its actual and constructive knowledge of Defendant Flowers' sexual harassment and his history and propensity for same, coupled with its failure to intercede on Ms. Young's behalf, Defendant Smyrna condoned, adopted, and ratified Defendant Flowers' conduct, making it liable for Flowers' intentional infliction of emotional distress upon Ms. Young.

106.

As a result of Defendants' unlawful actions, Ms. Young has suffered emotional distress, inconvenience, humiliation, and other indignities.

## <u>COUNT IV</u>
## NEGLIGENT RETENTION AND SUPERVISION
### *Against Defendant Smyrna*

107.

Paragraphs 15 through 78 are incorporated herein by reference.

108.

Throughout Ms. Young's employment, Defendant Flowers regularly and repeatedly subjected Ms. Young to sexual advances, sexual innuendos, offensive touching, and other forms of sexual harassment.

109.

Smyrna was aware of Defendant Flowers' sexual harassment of Ms. Young; yet, Smyrna continued to require Ms. Young to report to, and interact with, Flowers.

110.

Defendant Flowers' continual sexual harassment of Ms. Young created an intimidating, hostile, and offensive working environment for Ms. Young and other employees.

111.

Smyrna failed to take any remedial action toward Defendant Flowers, even after Ms. Young complained of Flowers' sexual harassment on numerous occasions and even after high level supervisors became aware of this harassment.

112.

Defendant Flowers' continuously harassed Ms. Young until she was constructively discharged.

113.

Moreover, Smyrna took no steps to correct the sexually harassing work environment that existed.

114.

The sexually harassing work environment includes, but is not limited to, inappropriate comments and touching by Flowers.

115.

Smyrna continues to employ Defendant Flowers when it actually knows, constructively knew, or in the exercise of reasonable care should have known, of Flowers' prior history of, reputation and propensity for, sexual harassment directed toward Ms. Young and/ or other employees.

116.

Notwithstanding Smyrna's actual and constructive knowledge of Flowers' prior history of, reputation, and propensity for, sexual harassment, Smyrna negligently supervised Flowers, failed to intercede on Ms. Young's behalf, and negligently retained Defendant Flowers, thereby ratifying, condoning, and adopting his conduct, making Smyrna liable for the negligent supervision and retention of Flowers.

## COUNT V
## PUNITIVE DAMAGES UNDER O.C.G.A. § 51-12-5.1
### *Against Defendant Flowers and Defendant Smyrna*

117.

Paragraphs 15 through 78 are incorporated herein by reference.

118.

All of Defendants' unlawful conduct set forth herein was intentional, willful, malicious, and conducted with the deliberate intent to harm Ms. Young, or was done with reckless disregard for Ms. Young and her rights.

119.

Accordingly, Defendants are liable to Ms. Young for punitive damages.

## COUNT VI
## ATTORNEYS' FEES AND COSTS UNDER O.C.G.A. § 13-6-11
### *Against Defendant Flowers and Defendant Smyrna*

120.

Paragraphs 15 through 78 are incorporated herein by reference.

121.

By their actions described above, and by their stubborn litigiousness prior to and during this lawsuit, Defendants acted in bad faith, were stubbornly litigious, and put Ms. Young to unnecessary trouble and expense.

122.

Thus, under O.C.G.A. § 13-6-11, Ms. Young is entitled to recover her attorneys' fees and expenses incurred in prosecuting this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.     That this Court take jurisdiction of this matter;

B.     That process be served;

C.     That Ms. Young be awarded a declaratory judgment that Defendants violated the constitution and Georgia law, as described above;

D.     That this Court enter a permanent injunction, prohibiting Defendants from engaging in unlawful employment practices, including unlawful sexual harassment, assault, and negligent retention.

E.     That the Court award Ms. Young her full back pay and reinstatement or front pay in lieu thereof, in an amount to be determined at the trial of this case;

F.     Prejudgment interest and post-judgment interest;

G.     That the Court award compensatory damages in an amount to be determined by the trier of fact;

H.     That the Court award punitive damages against Defendant Flowers in

an amount to be determined by the enlightened conscience of the jury to be sufficient to punish  Defendant Flowers for his conduct toward Plaintiff and deter him from similar conduct in the future;

I.      That the Court award Plaintiff her costs in this action and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and other applicable laws;

J.      That the Court grant Plaintiff the right to have a trial by jury on all issues triable to a jury; and

K.      That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 29th day of October, 2020.

**BUCKLEY BEAL, LLP**

By:      */s/ Rachel Berlin Benjamin*
          Rachel Berlin Benjamin
          Georgia Bar No. 707419
          rberlin@buckleybeal.com

600 Peachtree Street NE
Suite 3900
Atlanta, GA  30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101

*Counsel for Plaintiff*